## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DATA AXLE, INC., Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> CFM DATA NETWORK, LLC d/b/a DataSourceOne.com, a Minnesota limited liability company, ANDREW NOLTING, DOUGLAS FERRARA, CATHERINE "CATHY" MACK, and JOHN AND JANE DOES, real names unknown and representing the individual Owners, Officers, Directors, and Members of CFM Data Network, LLC d/b/a DataSourceOne.com, <br><br> Defendants. | Case No.: 0:23-cv-3255 <br><br><br><br> **COMPLAINT, DEMAND JURY TRIAL and REQUEST FOR TRIAL IN MINNEAPOLIS** |

Plaintiff Data Axle, Inc. ("Data Axle") hereby states and alleges as follows for its claims for relief against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com ("DSO"), Andrew Nolting ("Mr. Nolting"), Douglas Ferrara ("Mr. Ferrara"), Catherine "Cathy" Mack ("Ms. Mack"), and John and Jane Does, real names unknown and representing the individual Owners, Managers, Officers, Directors, and Members of DSO. Mr. Nolting, Mr. Ferrara, Ms. Mack, and John and Jane Does are referred to collectively herein as the "Individual Defendants." The Individual Defendants and DSO are collectively referred to herein as "Defendants."

### PARTIES

1.     Data Axle is a Delaware corporation with primary locations in Dallas, Texas and Omaha, Nebraska.

2.      DSO is a Minnesota limited liability company with its principal place of business located at 100 South Fifth Street, Suite 1900, Minneapolis, Minnesota 55402.

3.      Andrew Nolting is an individual who, upon information and belief, resides in Palm Beach County, Florida and may be served at 8814 Lakes Blvd., West Palm Beach, Florida 33412.

4.      Douglas Ferrara is an individual who, upon information and belief, resides in Salt Lake County, Utah and may be served at 144 E. 6940 S, Midvale, Utah 84047.

5.      Catherine "Cathy" Mack is an individual who, upon information and belief, resides in Hennepin County, Minnesota and may be served at 17987 Clear Spring Ln., Eden Prairie, Minnesota 55347 and/or 18620 27th Ave. N., Plymouth, Minnesota 55447.

6.      John and Jane Does, real names unknown, are individual owners, officers, directors, and members of DSO, and who participated in or otherwise benefitted from the past and future misconduct alleged herein.

## INTRODUCTION

7.      As described below, Defendants have and continue to steal and/or infringe Data Axle's intellectual property by fraudulently obtaining and selling for profit Data Axle's copyrighted databases. Data Axle seeks to recover its damages, fees and costs from such wrongful activity and to enjoin the continuing misconduct of the Defendants.

## JURISDICTION AND VENUE

8.      Jurisdiction in this Court and in the subject matter of this action arises under 17 U.S.C. § 501 *et seq.* (Copyright Act) and 18 U.S.C. § 1030 *et seq.* (Computer Fraud and Abuse Act). Thus, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and

supplemental jurisdiction over the Minnesota state claims identified below pursuant to 28 U.S.C. § 1367.

9.      Jurisdiction in this Court is also present pursuant to 28 U.S.C. § 1332 because, upon information and belief, there is complete diversity of citizenship between the parties, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.     This Court may exercise personal jurisdiction over DSO based upon its presence and substantial business activities within this judicial district, and because it was incorporated in the State of Minnesota.

11.     This Court may exercise personal jurisdiction over Mr. Nolting because, under Minn. Stat. § 543.19, he conducts substantial business in Minnesota through his involvement in the management and operation of DSO (Minn. Stat. § 543.19(2)), and through his actions in Minnesota which caused injury to Data Axle (Minn. Stat. § 543.19(3)), and/or Mr. Nolting committed acts outside Minnesota which caused injury in Minnesota (Minn. Stat. § 543.19(4)).

12.     This Court may exercise personal jurisdiction over Mr. Ferrara because, under Minn. Stat. § 543.19, he conducts substantial business in Minnesota through his involvement in the management and operation of DSO Minn. Stat. § 543.19(2)), and through his actions in Minnesota which caused injury to Data Axle (Minn. Stat. § 543.19(3)), and/or Mr. Ferrara committed acts outside Minnesota which caused injury in Minnesota (Minn. Stat. § 543.19(4)).

13.     This Court may exercise personal jurisdiction over Ms. Mack because she is domiciled in Minnesota and conducts substantial business in Minnesota through her involvement in the management and operation of DSO.

14.     Upon information and belief, this Court may exercise personal jurisdiction over John and Jane Does, real names unknown, who are the individual owners, officers, directors, and

members of DSO, and who participated in or otherwise benefitted from the past and future misconduct alleged herein, and are either domiciled in Minnesota and/or conducted substantial business in Minnesota through their involvement in the management and operation of DSO.

15.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims set forth in this Complaint occurred within this judicial district.

## FACTUAL ALLEGATIONS

16.     Data Axle collects, combines, and analyzes business information for sales, marketing, and business professionals around the world. Data Axle's data and marketing solutions help its customers find new prospects, deepen relationships with existing customers, and reach businesses and consumers at home, at work, and online.

17.     Data Axle offers its customers business solutions powered by its proprietary consumer and business databases. Data Axle has been licensing data since 1972 and is the original provider of these types of data services. Data Axle is synonymous with quality and creative business solutions.

18.     Data Axle maintains its compilation of business data in a business database (the "Business Database").

19.     Data Axle uses highly selective and creative business judgments to independently select, coordinate, arrange, and predict hundreds of marketable attributes of businesses in its Business Database.

20.     Data Axle's Business Database contains demographic, marketing and other related information on approximately 18 million active U.S. businesses.

21. To maintain the Business Database, Data Axle analyzes data from a multitude of original public and proprietary sources, including demographic and marketing information on consumers and businesses.

22. Data Axle also models some of the data in the Business Database, meaning it is not obtained from any outside source, but predicted or created by Data Axle using its highly selective and creative business judgments.

23. Data Axle's Business Database includes, without limitation, the selection, coordination, and arrangement of business information based on Data Axle's highly selective and creative business judgments as to, among other things:

    a. predicted market preferences;

    b. resolution of often-conflicting and incomplete data from multiple sources, including through use of a unique hierarchy of sources, which hierarchy is set by Data Axle; and

    c. proprietary modeling of unavailable business information.

24. Data Axle's compilation process goes far beyond the mere gathering, copying, and pasting of third party data into its Business Database.

25. Data Axle owns a valid, registered copyright in the creative works embodied in its Data Axle U.S. Business Database, which is covered by its copyright registration TX 8-827-485.

26. Data Axle owns a valid, registered copyright in the creative works embodied in its Data Axle U.S. Business Database, which is covered by its copyright registration TX 8-827-487.

27. Data Axle owns a valid, registered copyright in the creative works embodied in its Data Axle U.S. Business Database ("July 2019 Version"), which is covered by its copyright

registration TX 8-827-488. A true and correct of Data Axle's July 2019 copyright registration is attached hereto as **Exhibit A** and incorporated herein by reference.

28.     Data Axle owns a valid, registered copyright in the creative works embodied in its Data Axle U.S. Business Database ("March 2022 Version"), which is covered by its copyright registration TX 9-305-029 ("DAX March 2022 Database"). A true and correct of Data Axle's March 2022 copyright registration is attached hereto as **Exhibit B** and incorporated herein by reference.

29.     Data Axle owns a valid, registered copyright in the creative works embodied in its Data Axle U.S. Business Database ("July 2022 Version"), which is covered by its copyright registration TX 9-305-032 ("DAX July 2022 Database"). A true and correct of Data Axle's July 2022 copyright registration is attached hereto as **Exhibit C** and incorporated herein by reference.

30.     The U.S. District Court for the District of Nebraska (Case No. 8:14-CV-0049) and the U.S. Court of Appeals for the Eighth Circuit (No. 18-3723) held that Data Axle's Business Database was copyrightable and that Data Axle "made an independent selection and arrangement of facts that entail a minimal degree of creativity." This included, among other things, merging "overlapping data and purges inaccurate data (in its judgment)."

**Data Axle's Protection of its Business Database.**

31.     Data Axle maintains its proprietary Business Database on a protected computer system and uses such computer system to produce and provide mailing lists and other information to customers in interstate commerce across the United States.

32.     Data Axle takes commercially reasonable steps to protect its proprietary Business Database from unauthorized access or use, for example, by:

   a.     restricting access to its physical locations where its servers are located;

b.    restricting and tracking who comes and goes from Data Axle's business premises;

c.    restricting access to more sensitive areas within Data Axle's business premises to only authorized individuals;

d.    maintaining electronic security of its computer system;

e.    restricting electronic access to various parts of its databases;

f.    requiring employees with access to proprietary information and equipment containing proprietary information to sign nondisclosure/proprietary matters agreements limiting the scope of their authority to use and disclose information housed on Data Axle-protected computers;

g.    requiring such employees to use authorized usernames and passwords to access Data Axle's Business Database on Data Axle's secured servers;

h.    monitoring which employees have accessed its proprietary Business Database;

i.    not providing the database in "print form" in Data Axle's offices (or anywhere else);

j.    employing a large IT department which monitors, protects, and administrates Data Axle's computer systems, including purchasing and implementing antivirus, anti-malware, and anti-hacking software; and

k.    ensuring that sub-sets of the Business Databases (datasets) are only available electronically through the use of licensing agreements, which restrict the means and methods of how the licensee can use Data Axle's Business Databases.

**Data Axle Uses "Seed Data" in its Business Database to Detect Unauthorized Use.**

33.    To protect its proprietary Business Database and to detect unauthorized copy and use, Data Axle routinely inserts so-called "seed data" files into its Business Database and datasets. Each "seed" contains fictitious data such as name, address, or phone number, but secretly has contact information that connects or otherwise directs the contact to Data Axle. Data Axle uses the seeds as a sort of tripwire to alert Data Axle to unauthorized copy and use of Data Axle's Business Database.

34.    One example of how seeds protect Date Axle's Business Database is that sometimes when the Business Database is used for a marketing campaign, the end user will send advertisements to the entire list of companies derived from the Business Database, including to the seeds. When Data Axle receives the advertisement, it can then verify whether the copy and use of the Business Database was authorized.

35.    Another example of how seeds protect the Business Database is that Data Axle can audit a competitor's database to determine if Data Axle's seeds are present in that competing database. If a competitor's database was compiled legitimately, it would not have Data Axle's seeds in it.

36.    Data Axle's dynamic seeding process was initially developed in 2014. Initially, Data Axle generated approximately 5,000 unique seeds. Each customer purchasing datasets from Data Axle received a set of approximately fifty (50) seeds incorporated into their dataset, each with a unique Seed ID, and Data Axle updates each seed's company name prefix per product build and unique client dataset. As of October 2023, each seed information is updated monthly or per each unique dataset. Data Axle retains these unique seeds per product and client dataset in a

master seed list for future searches and investigations. Data Axle's master seed list currently contains over 2.4 million unique seeds (the "Master Seed List").

37.     Data Axle maintains its Master Seed List on a protected computer system and uses such computer system to produce and provide mailing lists and other information to customers in interstate commerce across the United States.

38.     Data Axle takes commercially reasonable steps to protect its Master Seed List from unauthorized access or use, for example, by:

    a.      restricting access to its physical locations where its servers are located which house the Master Seed List;

    b.      restricting and tracking who comes and goes from Data Axle's business premises;

    c.      restricting access to more sensitive areas within Data Axle's business premises to only authorized individuals;

    d.      maintaining electronic security of its computer system which houses the Master Seed List;

    e.      restricting electronic access to various parts of its databases including without limitation the Master Seed List;

    f.      requiring employees with access to the Master Seed List and equipment containing the Master Seed List to sign nondisclosure/proprietary matters agreements limiting the scope of their authority to use and disclose information housed on Data Axle-protected computers, such as the Master Seed List;

    g.      maintaining electronic security of its computer system which houses the Master Seed List;

h.      requiring such employees to use authorized usernames and passwords to access the Master Seed List on Data Axle's secured servers;

i.      monitoring which employees have accessed the Master Seed List;

j.      not providing the Master Seed List in "print form" in Data Axle's offices (or anywhere else);

k.      employing a large IT department which monitors, protects, and administrates Data Axle's computer systems, including purchasing and implementing antivirus, anti-malware, and anti-hacking software; and

l.      not providing the Master Seed List in its entirety to any third party under any circumstances.

39.     While there are Data Axle datasets that are distributed to customers and third parties pursuant to license agreements (which contain various seeds within such datasets), no one dataset provided to a customer or third party contains all of the seeds within the Master Seed List.

40.     The Master Seed List is one of Data Axle's most effective tools in detecting the unauthorized copy and use of its proprietary Business Database.

41.     Data Axle includes seed data in its Business Database that is protected by Data Axle's copyrights referenced above.

**Data Axle's Use of Customized SIC Codes and SIC Descriptions in its Business Database.**

42.     To sort and categorize its data, Data Axle has created a proprietary classification system through its use, modification, customization, and improvement of SIC codes and SIC descriptions.

43.     Standard Industrial Classification ("SIC") is a universal, standardized system for classifying industries by assigning each such industry a unique four-digit number. The system was created by the United States Government, and was most recently updated in 1987.

44.     As an example of classifications within the system, the code range of 0100-0999 identifies agricultural, forestry, and fishing businesses.

45.     As another example, the code range of 1500-1799 identifies construction businesses.

46.     Data Axle has integrated, modified, customized, and improved upon this system to meet the needs of its customers through, among other improvements, the addition of two numerical digits at the end of the original SIC code number (e.g., 1234xx), which allows for granularity and the creation of emerging categories which might not have existed in 1987 ("DAX SIC").

47.     For example, DAX SICs have been created to represent Electric Charging Stations and Marijuana Dispensaries.

48.     Data Axle has assigned detailed descriptions for each six-digit numerical code which provides further identification of the industry and business-type in question ("DAX SIC Description").

49.     DAX SICs and DAX SIC Descriptions are referred to collectively herein as "DAX SIC Combinations" which are stored, *in toto*, on a master list ("DAX SIC List").

50.     The DAX SIC Combinations are a part of Data Axle's Business Database that is protected by Data Axle's copyrights referenced above.

51.     Though not primarily intended to detect unauthorized use, if DAX SIC Combinations are found in a competitor's database, their presence indicates unauthorized use and copy.

**Record Overlap Rates Can Also Indicate Unauthorized Use.**

52.     The term "Record" refers to a single line of data in a database which contains information such as a business name, address, phone number, etc. A Record may contain real data or may contain seed data.

53.     Data industry competitors who legitimately compile their databases, will have some level of Record overlap without raising suspicion of improper data usage or copying.

**Common Errors Can Also Indicate Unauthorized Use.**

54.     In Data Axle's Business Database, there may be certain typographical errors that Data Axle failed to notice and correct. If those exact same typographical errors are found in a competitor's database, their presence would also indicate unauthorized use and copy.

**Audits of DSO's Database.**

55.     The nature of DSO's business is to help companies obtain marketing data including business data, consumer/residential data, email data, and cell phone data. DSO is a direct competitor of Data Axle. DSO represents itself as an "affordable alternative to the large and often overpriced data companies." DSO also represents itself as "the industry leader for providing [its customers] the freshest and most accurate lists at the best price." Like Data Axle,

DSO provides consumers with information on businesses and households throughout the United States.

56.     DSO owns and operates the website "datasourceone.com," which, like Data Axle's website, provides consumers with the information they need to obtain, purchase, and/or license databases for use in marketing. DSO's website also contains a page (which can be found at "datasourceone.com/data-axle-alternative") wherein DSO describes Data Axle's records as "[o]utrageously priced."

57.     Data Axle suspected Defendants of unauthorized copy and use of Data Axle's Business Database, and then purchased three complete sets of DSO's master database to further investigate Defendants' wrongdoing.

58.     The first DSO database was obtained March 7, 2022 ("DSO March 2022 Database"); the second was obtained August 30, 2022 ("DSO August 2022 Database"); and the third was obtained during the second quarter of 2023 ("DSO Q2 2023 Database") (collectively, the "DSO Databases").

59.     Having obtained copies of the DSO Databases, Data Axle undertook a data audit to determine whether its data was being used within the DSO Databases.

60.     As part of its data audit, Data Axle compared the DSO Databases with the DAX July 2019 Database, the DAX March 2022 Database, the DAX July 2022 Database, and Data Axle's current database ("DAX Current Database") (collectively, "Data Axle's Databases").

61.     These comparisons looked for Data Axle seeds, for DAX SIC Combinations, Record overlap, and common errors. The results of each test/investigation are summarized at a high level below.

62.     The <u>first analysis</u> compared the DSO *March 2022* Database with the DAX *July 2019* Database. This comparison revealed that (i) there was at least an 89.3% overlap between DSO's SICs and descriptions and  the DAX SIC List; and (ii) there was at least an 83.7% overlap between DSO's Records and DAX's Records.

63.     The <u>second analysis</u> compared the DSO *August 2022* Database with the DAX *July 2019* Database. This comparison revealed that (i) there was at least a 99.8% overlap between DSO's SICs and descriptions and the DAX SIC List; and (ii) there was at least an 85.9% overlap between DSO's Records and DAX's Records.

64.     The <u>third analysis</u> compared the DSO *August 2022* Database with the DAX *July 2022* Database. This comparison revealed that (i) there was at least an 98.0% overlap between DSO's SICs and descriptions and the DAX SIC List; and (ii) there was at least an 74.8% overlap between DSO's Records and DAX's Records.

65.     The <u>fourth analysis</u> compared the DSO Q2 2023 Database with the DAX SIC List. This comparison revealed that (i) at least 99.4% of DSO's SICs matched the DAX SICs exactly; (ii) and at least 89.9% of DSO SICs and descriptions matched the DAX SIC Combinations exactly.

66.     The <u>fifth analysis</u> compared the DSO *March 2022* Database with the Master Seed List. This analysis revealed at least 10,333 instances of Data Axle's seeds comprised of 36 unique Data Axle seeds.

67.     The <u>sixth analysis</u> compared the *August 2022* Database with the Master Seed List. This analysis revealed at least 10,333 instances of Data Axle's seeds comprised of 36 unique Data Axle seeds.

68.     The <u>seventh analysis</u> compared the DSO *Q2 2023* Database with the Master Seed List. This analysis revealed at least 32 instances containing 26 unique seeds.

69.     The analyses also detected common errors in both the Data Axle's Databases and DSO's Databases; detected the DAX's seeds in DSO's Databases; detected the DAX SIC Combinations in DSO's Databases; revealed overlap percentage in excess of industry standard overlap percentages.

70.     Moreover, each of DSO's data sets contains over 20 million records, yet were sold for a mere $325.00 and $375.00 each, which is grossly under a fair market license fee for such a business database if it was either (a) properly licensed to a "reseller," or (b) properly compiled, verified, deduped and updated. DSO's pricing thus suggests that DSO is licensing "stolen" data. Thus, DSO's pricing further suggests its improper use and copy of Data Axle's Business Database.

71.     Because Defendants have been selling Data Axle's data (which it obtained and re-sold without license to do so) for substantially below market value, Data Axle has lost potential clients.

72.     The audit results show that Defendants have copied, used and purportedly licensed Data Axle's Business Database without authority or license to do so.

73.     There is no applicable licensing agreement which would allow Defendants to re-sell or relicense any portion of Data Axle's Databases.

74.     Based on information collected to date, it appears that Defendants could only have obtained Data Axle's Business Database through two avenues: (a) licensed it from Data Axle or one of its "resellers" or licensees subject to a licensing agreement or "terms and conditions" which prohibits resale or relicensing of Data Axle's Business Database or any part

thereof; or (b) obtained Data Axle's Business Database through improper means such as through scrapping, hacking, or illegally in concert with someone with access thereto. Regardless of the avenue, Defendants were never authorized to have lawful possession of or access to Data Axle's Business Database.

75.    Defendants thus copied the original elements of Data Axle's work as shown by such direct evidence and by Defendants' access to the copyrighted materials and the substantial similarity of ideas and expression which exists between the DSO databases referenced herein and Data Axle's copyrighted materials.

76.    Therefore, Defendants have (a) wrongfully obtained access to and copied Data Axle's Business Database, (b) wrongfully used, advertised and purportedly licensed Data Axle's Business Database without authority or license to do so, (c) wrongfully claimed that the DSO databases referenced herein are owned or lawfully being used by DSO, and (d) wrongfully profited from the unauthorized access, copy, use, false advertisement, and license of Data Axle's Business Database.

**Relief Sought by Data Axle.**

77.    As a proximate cause of Defendants' wrongful conduct, Data Axle has lost customers and sales to DSO, and DSO has wrongfully profited from its unauthorized use of Data Axle's Business Database resulting in actual damages to Data Axle and profits to Defendants that are attributable to the infringement and are not taken into account in computing actual damages, all in amounts to be determined at trial, or in Data Axle's election, statutory damages under § 504 of the Federal Copyright Act.

78.     As a proximate cause of Defendants' wrongful conduct, Data Axle has incurred fees, costs and expenses in efforts to mitigate its damages, all in amounts to be determined at trial.

79.     As a proximate cause of Defendants' wrongful conduct, Data Axle has and/or will incur attorney and expert fees, costs and expenses as well as taxable Court costs prosecuting these claims, all in amounts to be determined at trial.

80.     Because Defendants' infringement was committed willfully, Data Axle is entitled to have its damages statutorily increased, under § 504 of the Federal Copyright Act, in addition to the other monetary relief herein sought, if Data Axle elects statutory damages.

81.     As a proximate cause of Defendants' wrongful conduct, Data Axle is entitled to pre-judgment and post-judgment interest on any award granted to Data Axle.

82.     As a proximate cause of Defendants' wrongful conduct, Data Axle is entitled to an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (a) Defendants' wrongful access to, and copying of, Data Axle's Business Database; (b) Defendants' wrongful use, advertisement and purported licensing of Data Axle's Business Database (including the time period, nature and extent) without authority or license to do so; (c) Defendants' wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (d) Defendants' wrongful profit (financial and otherwise) from the unauthorized access, copy, use, false advertisement, and license of Data Axle's Business Database.

83.     As a proximate cause of Defendants' wrongful conduct, Data Axle is entitled to an order requiring the impounding of all copies of Data Axle's Business Database, all portions of

Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control pursuant to the Federal Copyright Act, 17 U.S.C. § 503.

84.     As a proximate cause of Defendants' wrongful conduct, Data Axle is entitled to an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control, pursuant to the Federal Copyright Act, 17 U.S.C. § 503.

85.     Defendants threaten to continue their wrongful conduct referenced herein, and Data Axle is thus under the threat of irreparable harm in the absence of injunctive relief and has no adequate remedy at law. Data Axle is entitled to preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons (Fed. R. Civ. P. 65; *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020); and Federal Copyright Act, 17 U.S.C. § 502) from (a) wrongfully obtaining access to and copying Data Axle's Business Database, (b) wrongfully using, advertising and purportedly licensing Data Axle's Business Database without authority or license to do so, (c) wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO, and (c) wrongfully profiting from the unauthorized access, copy, use, false advertisement, and license of Data Axle's Business Database.

**CLAIM FOR RELIEF NO. 1**
**COPYRIGHT INFRINGEMENTS**
*(U.S. Copyright Registration Nos. TX 8-827-488 & TX 9-305-032)*

86.     Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

87.     Data Axle owns valid, registered copyrights in the creative works embodied in its DAX July 2019 Database, which is covered by its U.S. Copyright Registration No. TX 8-827-488.

88.     Data Axle owns valid, registered copyrights in the creative works embodied in its DAX March 2022 Database, which is covered by its copyright registration TX 9-305-029.

89.     Data Axle owns valid, registered copyrights in the creative works embodied in its DAX July 2022 Database, which is covered by its U.S. Copyright Registration No. TX 9-305-032.

90.     DSO's databases plagiarize, use, copy, publish, are composed of, and/or incorporate derivative works based upon the copyrighted Data Axle Business Database.

91.     There was only a small percentage of data within the DSO Databases in question that was not a complete or partial verbatim plagiarism, copy and misappropriation of Data Axle's copyrighted Business Database, and which have resulted in the creation or incorporation of unauthorized derivative works by Defendants.

92.     Defendants accessed, plagiarized, used, copied, published, licensed, falsely advertised, and created and/or incorporated derivative works based upon the copyrighted Data Axle Business Database, all without Data Axle's knowledge, consent, license or authorization.

93.     Defendants' unlawful conduct as described herein constitutes copyright infringement in violation of the Federal Copyright Act, 17 U.S.C. § 501 *et seq.*

94.     Defendants' infringement of Data Axle's copyrights was willful and intentional.

95.     The Individual Defendants were active participants in the violation of Data Axle's copyrighted Business Database.

96.     The Individual Defendants were the decision makers and persons in charge of DSO that effectuated the copyright infringement described herein and/or who directly benefited from such infringement.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, jointly and severally, for an award of:

(a) under § 504(b) of the Federal Copyright Act, actual damages suffered by Data Axle and any profits received by Defendants that are not taken into account in computing the actual damages, or in Data Axle's election, statutory damages under § 504 of the Federal Copyright Act;

(b) under § 505 of the Federal Copyright Act, interest, costs, and expert and attorneys fees;

(c) under § 504(c)(2) of the Federal Copyright Act, a statutory increase of its damages, in addition to the other monetary relief herein sought, if Data Axle elects statutory damages;

(d) all other relief to which Data Axle is entitled under the Federal Copyright Act;

(e) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

(f) pre- and post-judgment interest on any award granted to Data Axle;

(g) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii) wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sell of Data Axle's Business Database under Federal Copyright Act, 17 U.S.C. § 502;

(h) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database (including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants' wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(i) an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products

or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control pursuant to the Federal Copyright Act, 17 U.S.C. § 503;

(j) an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control, pursuant to the Federal Copyright Act, 17 U.S.C. § 503; and

(k) an award of such other further and different relief as the Court deems just and equitable.

**CLAIM FOR RELIEF NO. 2**
**BREACH OF CONTRACT OR TERMS AND CONDITIONS**

97.     Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

98.     End users and licenses of Data Axle's Business Database must accept terms and conditions or sign a written agreement (whether directly with Data Axle or with one of its "resellers") to be granted permission to use data within Data Axle's Business Database.

99.     One of the material terms contained in such terms and conditions or written agreement is that the end user or licensee may not resell or relicense data obtained from Data Axle's Business Database.

100.    To the extent Defendants obtained data from Data Axle's Business Database via the methods available for legitimate end users and licensees as described above, Defendants have materially breached such terms and conditions and/or written agreement in one or more of the ways described herein.

101.    Data Axle has sustained injuries and damages as a result of Defendants' actions. By way of example and not limitation, it has lost clients and revenue as a result of the unlawful actions of Defendants. The damages to Data Axle are significant, and will be proved with specificity at trial.

102.    Defendants' wrongful actions alleged herein have caused, and unless enjoined by the Court, will continue to cause irreparable injury and other damages, for which no adequate remedy exists at law in the absence of preliminary and injunctive relief.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, jointly and severally, for an award of:

(a) actual damages suffered by Data Axle and any profits received by Defendants that are not taken into account in computing the actual damages;

(b) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

(c) pre- and post-judgment interest on any award granted to Data Axle;

(d) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii) wrongfully claiming that the DSO databases referenced herein are owned or lawfully

being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of Data Axle's Business Database;

(e) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation of Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database (including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants' wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(f) an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control;

(g) an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control; and

(h) an award of such other further and different relief as the Court deems just and equitable.

## CLAIM FOR RELIEF NO. 3
## COMPUTER FRAUD AND ABUSE ACT (CFAA)

103. Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

104. The CFAA is a criminal statute that contains a civil enforcement provision. In pertinent part, the statute provides: "Whoever ... knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value ... shall be punished as provided in subsection (c) of this section." 18 U.S.C. § 1030(a)(4).

105. Defendants could only access the Data Axle databases and the Master Seed List by theft, hacking, or other improper and unauthorized means.

106. Upon information and belief, Defendants have accessed a protected computer.

107. Upon information and belief, Defendants have done so without authorization.

108. Upon information and belief, Defendants have done so knowingly and with intent to defraud.

109. Defendants' actions have furthered the intended fraud and obtained the valuable Data Axle Business Database and seed information.

110. Further, upon information and belief, the unauthorized access resulted in more than simply use of the protected computer, and caused in excess of $5,000 of damages, costs, and losses to Data Axle in any one year period in question.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, real names unknown and representing the individual Owners, Officers, Directors, and Members of DSO, jointly and severally, awarding:

(a) compensatory damages and injunctive or other equitable relief as permitted or required by 18 U.S.C.A. § 1030 and applicable law;

(b) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

(c) pre- and post-judgment interest on any award granted to Data Axle;

(d) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii) wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of Data Axle's Business Database;

(e) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation of Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database (including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants'

wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(f) an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control;

(g) an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control; and

(h) an award of such other further and different relief as the Court deems just and equitable.

## CLAIM FOR RELIEF NO. 4
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

111. Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

112. There exists a valid business relationship or expectancy between Data Axle and its active clients and active users. Data Axle expends significant capital to maintain those clients as well as to market, advertise and secure new clients to purchase its databases and related offerings.

113.    Defendants have had, and continue to have, knowledge of Data Axle's expectation of economic advantage.

114.    Defendants' actions constitute unjustified intentional acts of interference with Data Axle's expectation of economic advantage.

115.    Defendants' intentional interference was independently tortious or in violation of a state or federal statute or regulation as alleged herein.

116.    In the absence of Defendants' wrongful actions, it is reasonably probable that Data Axle would have realized an economic advantage or benefit from its active clients and prospective clients.

117.    Data Axle has sustained injuries and damages as a result of Defendants' actions. By way of example and not limitation, it has lost clients and revenue as a result of the unlawful actions of Defendants. The damages to Data Axle are significant, and will be proved with specificity at trial.

118.    Defendants' wrongful actions alleged herein have caused, and unless enjoined by the Court, will continue to cause irreparable injury and other damages, for which no adequate remedy exists at law.

119.    Defendants' continued wrongful interference with Data Axle's expectation of economic advantage is threatened, continuous, and ongoing, and as such, Data Axle will continue to be irreparably harmed in the absence of preliminary and injunctive relief.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, real names unknown and representing the

individual Owners, Officers, Directors, and Members of DSO, jointly and severally, for an award of:

    (a) actual damages suffered by Data Axle and any profits received by Defendants that are not taken into account in computing the actual damages;

    (b) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

    (c) pre- and post-judgment interest on any award granted to Data Axle;

    (d) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii) wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of Data Axle's Business Database;

    (e) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation of Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database

(including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants' wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(f) an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control;

(g) an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control; and

(h) an award of such other further and different relief as the Court deems just and equitable.

**CLAIM FOR RELIEF NO. 5**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**

120.    Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

121.    Data Axle has licensing agreements with various third parties.

122.    Upon information and belief, Defendants contracted with one or more of Data Axle's licensees to purchase Data Axle's data.

123.    The terms and conditions of Data Axle's licensing agreements prohibit the resale of Data Axle's data.

124.    Upon information and belief, Defendants knew of the licensing agreement between Data Axle and its licensee.

125.    Upon information and belief, Defendants intentionally caused Data Axle's licensee to breach the licensing agreement.

126.    Defendants' actions were not justified.

127.    Upon information and belief, as a result of Defendants' tortious interference with the licensing agreement, Data Axle has suffered monetary damages in an amount to be determined at trial.

128.    Defendants' wrongful actions alleged herein have caused, and unless enjoined by the Court, will continue to cause irreparable injury and other damages, for which no adequate remedy exists at law.

129.    Defendants' continued wrongful interference with Data Axle's contractual relationship with its licensee is threatened, continuous, and ongoing and, as such, Data Axle will continue to be irreparably harmed in the absence of preliminary and injunctive relief.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, real names unknown and representing the individual Owners, Officers, Directors, and Members of DSO, jointly and severally, for an award of:

(a) actual damages suffered by Data Axle and any profits received by Defendants that are not taken into account in computing the actual damages;

(b) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

(c) pre- and post-judgment interest on any award granted to Data Axle;

(d) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii) wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of Data Axle's Business Database;

(e) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation of Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database (including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants' wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(f)   an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control;

(g)   an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control; and

(h)   an award of such other further and different relief as the Court deems just and equitable.

**CLAIM FOR RELIEF NO. 6**
**CIVIL CONSPIRACY**

130.   Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

131.   Under applicable law, a civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means.

132.   A civil conspiracy is actionable if the alleged conspirators actually committed some underlying misconduct.

133.   Defendants conspired at least among themselves, and likely with others, to commit the unlawful and tortious actions alleged in this Complaint.

134.   The conspiracy resulted in (and continues to result in) real and significant injury and damages to Data Axle in the form of lost sales, lost reputation, and similar injuries.

135.   Defendants' wrongful actions alleged herein have caused, and unless enjoined by the Court, will continue to cause irreparable injury and other damages, for which no adequate remedy exists at law.

136.   Defendants' continued pursuit of their unlawful and oppressive objectives is threatened, continuous, and ongoing and, as such, Data Axle will continue to be irreparably harmed in the absence of preliminary and injunctive relief.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendants CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, real names unknown and representing the individual Owners, Officers, Directors, and Members of DSO, jointly and severally, for an award of:

(a) actual damages suffered by Data Axle and any profits received by Defendants that are not taken into account in computing the actual damages;

(b) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

(c) pre- and post-judgment interest on any award granted to Data Axle;

(d) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii)

wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of Data Axle's Business Database;

(e) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation of Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database (including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants' wrongful claim that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(f) an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control;

(g) an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control; and

(h) an award of such other further and different relief as the Court deems just and equitable.

## CLAIM NO. 7
## UNJUST ENRICHMENT

137.    Data Axle repeats and re-alleges each of the allegations in the preceding paragraphs as if each were set forth in full herein.

138.    Defendants have received substantial financial benefits as a result of their tortious and improper conduct alleged herein..

139.    Defendants have received and retained these financial benefits, primarily in the form of improperly earned revenue, under circumstances where it would be inequitable and unjust for Defendants to retain that revenue.

140.    The retention by Defendants of the substantial financial benefits it has and continues to receive and hold would be unjust under the circumstances.

141.    Defendants' wrongful actions alleged herein have caused, and unless enjoined by the Court, will continue to cause irreparable injury and other damages, for which no adequate remedy exists at law.

142.    Defendants' continued tortious and improper conduct as alleged herein is threatened, continuous, and ongoing and, as such, Data Axle will continue to be irreparably harmed in the absence of preliminary and injunctive relief.

WHEREFORE, Plaintiff Data Axle, Inc. requests judgment in its favor and against Defendant CFM Data Network, LLC d/b/a DataSourceOne.com, Andrew Nolting, Douglas Ferrara, Cathy Mack, and John and Jane Does, real names unknown and representing the individual Owners, Officers, Directors, and Members of DSO, jointly and severally, for:

(a) actual damages suffered by Data Axle and any profits received by Defendants that are not taken into account in computing the actual damages;

(b) fees, costs, and expenses associated with actions taken to mitigate the damages caused by Defendants;

(c) pre- and post-judgment interest on any award granted to Data Axle;

(d) preliminary and permanent injunctions (and possibly a temporary restraining order) prohibiting Defendants and DSO's officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons from (i) wrongfully obtaining access to, copying or otherwise misappropriating Data Axle's Business Database; (ii) wrongfully using, advertising, marketing and purportedly licensing or purchasing Data Axle's Business Database without authority or license in writing directly from Data Axle to do so; (iii) wrongfully claiming that the DSO databases referenced herein are owned or lawfully being used by DSO; and (iv) wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of Data Axle's Business Database;

(e) an order requiring Defendants to provide an accounting of the records, documents, and electronically stored information in the possession, custody, or control of Defendants relating to (i) Defendants' wrongful access, copy or misappropriation of Data Axle's Business Database; (ii) Defendants' wrongful use, advertisement, marketing and purported licensing or purchasing of Data Axle's Business Database (including the time period, nature and extent) without authority or license in writing directly from Data Axle to do so; (iii) Defendants' wrongful claim that the DSO

databases referenced herein are owned or lawfully being used by DSO; and (iv) Defendants' wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of Data Axle's Business Database;

(f) an order requiring the impounding of all copies of Data Axle's Business Database, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control;

(g) an order requiring the destruction of all copies of Data Axle's Business Database in Defendants' possession or control, all portions of Data Axle's Business Database incorporated into any of DSO's products or services, and/or other articles by means of which such copies may be reproduced in Defendants' possession or control; and

(h) an award of such other further and different relief as the Court deems just and equitable.

## JURY DEMAND AND REQUEST FOR PLACE OF TRIAL

Pursuant to Fed. R. Civ. P. 38 and Minn. Civ. R. 38, Data Axle Inc. hereby demands a trial by jury and requests that trial of this case take place in Minneapolis, Minnesota.

Dated this 23th day of October 2023.

DATA AXLE, INC., Plaintiff,

By: /s/ George W. Soule

George W. Soule [0103664]
Issac W. Messmore [0393276]
3033 Excelsior Blvd., Suite 190
Minneapolis, MN 55416
(612) 353-6403; (612) 573-6484 (facsimile)
gsoule@soulestull.com
imessmore@soulestull.com

*and*

Elizabeth L. Enroth, *Admission to USDC for the District of Minnesota Pending*
John V. Matson,
*Pro Hac Vice Application to be Submitted*
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500; (402) 390-9005 (facsimile)

Elizabeth.Enroth@koleyjessen.com
John.Matson@koleyjessen.com

*Attorneys for Plaintiff*