UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DATA AXLE, INC., | Case No. 23-cv-3255 (LMP/DLM) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS** |
| CFM DATA NETWORK, LLC; ANDREW NOLTING; DOUGLAS FERRARA; JOHN and JANE DOES, | |
| Defendants. | |

George W. Soule and Isaac W. Messmore, **Soule & Stull LLC, Edina, MN**, and John V. Matson, Patrick J. Kimmel, and Elizabeth Luebbert Enroth, **Koley Jessen P.C., L.L.O., Omaha, NE**, for Plaintiff.

Nathan M. Hansen, **Hansen Law Office, Willernie, MN**, for Defendant Andrew Nolting.

On April 12, 2024, the Court entered an order (the "Order") granting default judgment against Defendant CFM Data Network, LLC d/b/a DataSourceOne.com ("DSO"). *See* ECF No. 37. Plaintiff Data Axle, Inc. ("Data Axle") contends DSO and Defendant Andrew Nolting ("Nolting") violated the Order and moved for an order to show cause why DSO and Nolting should not be held in contempt, which the Court issued on December 12, 2024. *See* ECF No. 69. Nolting responded to the Court's show-cause order; DSO did not. ECF Nos. 71, 72. A show-cause hearing on Data Axle's motion was held on April 9, 2025; Nolting appeared, but DSO did not. For the following reasons, the Court grants in part and denies in part Data Axle's motion for contempt sanctions.

## FACTUAL BACKGROUND

Data Axle is a provider of data and marketing services and relies on proprietary, copyrighted business databases to provide these services. ECF No. 1 ¶¶ 16–30.[1] Data Axle suspected that DSO—a data services competitor which operated under the name "datasourceone.com"—had, without permission, copied and used Data Axle's business databases in its own dataset offerings. *Id.* ¶¶ 55–57. Data Axle purchased three datasets from DSO, and after undertaking a data audit, concluded that DSO's databases infringed upon Data Axle's copyrighted information. *Id.* ¶¶ 58–76.

Data Axle then brought this action against DSO, Nolting, Defendant Douglas Ferrara, and Defendants John and Jane Does (collectively, "Defendants") on October 23, 2023. *See id.* Nolting is the sole owner and shareholder of DSO. Pl.'s Ex. AA at 21, 35.[2] Data Axle alleged violations of the Copyright Act and the Computer Fraud and Abuse Act and asserted a variety of state-law claims against Defendants. ECF No. 1 ¶¶ 86–142.

Despite being properly served, ECF No. 11, DSO failed to timely answer or otherwise respond to Data Axle's complaint. Accordingly, Data Axle brought a motion for

---

[1]   Because DSO is in default, the allegations of the complaint are deemed admitted as against DSO. *See Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) ("It is nearly axiomatic that when a default judgment is entered, facts alleged in the complaint may not be later contested.").

[2]   The Court received exhibits at the show-cause hearing, *see* ECF No. 75, but most of those exhibits were already filed on the Court's docket, *see* ECF Nos. 58-1, 58-2, 65. For ease of reference, the Court cites both the docket entry and the admitted exhibit letter where possible. The page number in both versions is the same.

2

default judgment against DSO, ECF No. 26, which the Court granted on April 12, 2024, ECF No. 37.  Specifically, the Court ordered that:

> Judgment is entered in favor of Plaintiff Data Axle, Inc., and against Defendant CFM Data Network, LLC d/b/a DataSourceOne.com in the principal amount of $450,000, plus reasonable attorney fees and costs of $94,058.
>
> Defendant CFM Data Network, LLC d/b/a DataSourceOne.com and its officers, agents, servants, employees, and attorneys, as well as those persons or entities in active concert or participation with such persons are hereby permanently enjoined (with no bond or security requirement) from . . . wrongfully using, advertising, marketing and purportedly licensing or purchasing the copyrighted Data Axle Business Databases without authority or license in writing directly from Data Axle, Inc. . . . [and] wrongfully profiting from the unauthorized access, copy, use, false advertisement or marketing, and license or sale of the copyrighted Data Axle Business Databases.
>
> Defendant CFM Data Network, LLC d/b/a DataSourceOne.com is hereby ordered to provide to counsel of record for Plaintiff, within 30 days of the entry of this Default Judgment and Permanent Injunction, an accounting of the records, documents, and electronically stored information in its possession, custody, or control relating to (i) its wrongful access, copy or misappropriation of the copyrighted Data Axle Business Databases; (ii) its wrongful use, advertisement, marketing and purported licensing or purchasing of the copyrighted Data Axle Business Databases (including the time period, nature and extent) without authority or license in writing directly from Data Axle, Inc. to do so; (iii) its wrongful claim that its databases are owned or lawfully being used by Defendant CFM Data Network, LLC d/b/a DataSourceOne.com; and (iv) its wrongful profit from the unauthorized access, copy, use, false advertisement or marketing, and/or license or sale of the copyrighted Data Axle Business Databases.
>
> All copies of the Data Axle Business Databases in the possession or control of Defendant CFM Data Network, LLC d/b/a DataSourceOne.com are hereby ordered impounded including all portions of the copyrighted Data Axle Business Databases incorporated into any of Defendant CFM Data Network, LLC d/b/a DataSourceOne.com's products or services, and/or other articles by means of which such copies may be reproduced in its possession or

> control; and shall be produced to counsel of record for Plaintiff, within 30 days of the entry of this Default Judgment and Permanent Injunction, and after such production, Defendant CFM Data Network, LLC d/b/a DataSourceOne.com shall destroy all copies of (i) the Data Axle Business Databases in its possession or control; (ii) all portions of the Data Axle Business Databases incorporated into any of Defendant CFM Data Network, LLC d/b/a DataSourceOne.com's products or services; and (iii) other articles by means of which such copies may be reproduced in its possession or control.

*Id.* at 4–6. Unbeknownst to Data Axle at the time, DSO had been administratively terminated by the Minnesota Secretary of State on February 27, 2024, for failure to file an annual renewal. ECF No. 58-1 at 55 (Pl.'s Ex. R). Around October 2024, Data Axle learned of DSO's administrative termination and discovered that Nolting may be operating another entity—datasource360.com—that it suspected to be selling databases containing Data Axle's copyrighted information. ECF No. 58-2 ¶¶ 3–4. Data Axle noted parallels between DSO's website and datasource360.com, including: (1) the URL to DSO's website automatically redirects to datasource360.com; (2) the datasource360.com website looks strikingly similar to the DSO website; and (3) the datasource360.com website offers for sale databases with some of the same names as those offered on DSO's website. ECF No. 58-1 at 65–80 (Pl.'s Ex. R); ECF No. 58-2 ¶ 6.

Upon further investigation, Data Axle uncovered evidence that Nolting was involved with datasource360.com. Accordingly, Data Axle moved for an order to show cause why DSO and Nolting should not be held in contempt for violating the Order. ECF No. 57. Data Axle alleges four ways that DSO and Nolting are violating the Order: (1) DSO's failure to pay the judgment against it; (2) Nolting's wrongful use of Data Axle's copyrighted data through datasource360.com; (3) DSO's failure to provide an accounting

4

of records related to its wrongful use of Data Axle's copyrighted data; and (4) DSO's failure to impound, produce, and destroy Data Axle's copyrighted data. ECF No. 59 at 16–18. Data Axle requests that the Court imprison Nolting as a civil contempt sanction or, in the alternative, refer Nolting to the U.S. Attorney for the District of Minnesota for criminal contempt proceedings. *Id.* at 12–16.

The Court issued a show-cause order on December 12, 2024, and requested any written responses by DSO and Nolting to be filed by January 10, 2025. ECF No. 69 at 2. DSO did not file a response. Nolting timely filed a response and denies that he engaged in wrongful conduct that warrants contempt. ECF No. 71 ¶ 5. Nolting faults Data Axle for "refus[ing] to produce substantive evidence to Mr. Nolting in the form of the infringed upon database(s) and their seed information[3] so that he can defend himself against this accusation." ECF No. 72 at 2. Nolting argues that he "needs to have an opportunity to examine the evidence against him, in this case, the database or databases." *Id.*

The Court held a hearing on Data Axle's motion on April 9, 2025. The Court admitted documentary exhibits[4] and heard testimony from Kendra Vosler, an associate at

---

[3] To detect unauthorized copy and use, Data Axle inserts so-called "seed data" into its copyrighted databases. Each "seed" contains fictitious data such as names, addresses, or phone numbers, but secretly has contact information that connects or otherwise directs the contact to Data Axle. Data Axle uses the seeds as a sort of tripwire to alert Data Axle to unauthorized copy and use of its databases. ECF No. 1 ¶ 33.

[4] Although Nolting's counsel objected to numerous exhibits offered by Data Axle, at the end of the day, only one set of those exhibits played a role in the Court's decision: the screenshots of DSO's and DS360's websites. *See* ECF No. 58-1 at 65–80 (Pl.'s Ex. R). Those exhibits were properly authenticated by Kendra Vosler, who personally visited those websites. S*ee United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017) ("Exhibits

Data Axle's law firm, and from Nolting. Relevant here, Vosler testified that although she had identified similarities between DSO's website and datasource360.com, Data Axle had not undertaken any data analysis to determine whether the databases sold by datasource360.com contained Data Axle's copyrighted information. As for Nolting, he testified that while DSO was an active entity, he was its sole owner and was "the sole person in control of DSO." He also admitted that he is involved with datasource360.com.

However, Nolting denied that datasource360.com is using or selling any of Data Axle's copyrighted databases. Nolting testified that he believed a certain database sold by DSO—"USA Business Database-SE"—may have contained Data Axle's copyrighted information. However, Nolting explained that datasource360.com does not use or sell this database. Nolting testified that copies of that database in DSO's possession have been destroyed and that he does not "even have the source" to the database anymore. Nolting explained that datasource360.com does not sell Data Axle's copyrighted information because datasource360.com licenses third-party data from reputable vendors, inserts additional data into the datasets from open sources and other vendors, and resells the data. However, Nolting asserted that this data does not include Data Axle's copyrighted information.

---

depicting online content may be authenticated by a person's testimony that [s]he is familiar with the online content and that the exhibits are in the same format as the online content."). And those exhibits were offered for a non-hearsay purpose (namely, to show similarities between DSO's and DS360's websites).

## ANALYSIS

Federal law authorizes the Court to impose civil contempt for disobedience of a court order. *See* 18 U.S.C. § 401(3). "[P]unishment in civil contempt is imposed to coerce compliance with a court directive." *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 381 F. Supp. 3d 1082, 1089 (D. Minn. 2019). Because civil contempt penalties are considered coercive and avoidable through obedience, a court may impose such penalties only "upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

In a civil contempt proceeding, the moving party must prove, by clear and convincing evidence, that the person allegedly in contempt violated the court's order. *See Chi. Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). The moving party must also show that the person allegedly in contempt had knowledge of the order at issue. *See Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir. 1994); *United States v. Thornton*, No. 13-mc-87 (SRN/TNL), 2015 WL 1522245, at *2 (D. Minn. Mar. 27, 2015). Once the moving party has met its burden, the burden shifts to the nonmoving party to show inability to comply. *Chi. Truck Drivers*, 207 F.3d at 505.

The Court first notes that DSO and Nolting have been provided notice and an opportunity to be heard: both DSO and Nolting were served with the motion, ECF No. 70; both were invited to submit briefs to the Court, ECF No. 69 at 2; and the Court held a show-cause hearing that was noticed to all parties, *see id.* at 1–3; ECF No. 75. The Court therefore proceeds to examine each of the four categories of behavior alleged by Data Axle to be in contempt of this Court's April 12, 2024 order.

I. **Payment of the Judgment**

Data Axle first asks that the Court order "DSO and Mr. Nolting . . . to remit the amounts identified in [] the Judgment within 30 days and issue a warrant for Mr. Nolting's arrest if he fails to do so." ECF No. 59 at 17.

As to whether DSO had knowledge of the Order, the Court concludes that it did. The Order was served through CM/ECF upon Nolting's counsel of record, whose knowledge is "imputed to his client." *See In re Uponor, Inc., F1807 Plumbings Fittings Prods. Liab. Litig.*, No. 11-md-2247 (ADM/JJK), 2012 WL 2325798, at *3 (D. Minn. June 19, 2012) (citing *Lundin v. Stratmoen*, 85 N.W.2d 828, 831 (Minn. 1957)). Nolting therefore has notice of the Order, and he admits that he was the sole owner and person in control of DSO. Knowledge obtained by a corporate officer while acting within the scope of his or her duty "may be imputed to the corporation." *St. Paul Fire & Marine Ins. Co. v. Fed. Deposit Ins. Co.*, 968 F.2d 695, 700–01 (8th Cir. 1992) (citing *Brooks Upholstering Co. v. Aetna Ins. Co.*, 149 N.W.2d 502, 506 (Minn. 1967)). And knowledge of officers and key employees of a corporation obtained even after termination of their employment is "conclusive upon the corporation" if the facts are "of continuing importance to the business of the corporation." *Acme Precision Prods, Inc. v. Am. Alloys Corp.*, 422 F.2d 1395, 1398 (8th Cir. 1970). Because Nolting was the sole owner and officer of DSO, and because he had knowledge of the Order (which undoubtedly contained information "of continuing importance" to DSO), DSO also has knowledge of the Order.

The next question is whether DSO violated the Order. There appears to be no dispute that DSO has failed to pay the money judgment against it, and DSO offers no reason

why it was unable to pay the money judgment (indeed, DSO's tax records show it made more than $1.4 million from 2019 to 2023). Pl.'s Ex. AA at 13, 15, 29, 40. Accordingly, the Court holds DSO in contempt for failing to satisfy the money judgment against it.

As to whether the Court can hold Nolting in contempt for DSO's failure to pay the judgment, the Court observes that Nolting was not personally ordered to pay the judgment for DSO; rather, the Court only entered judgment for money damages against DSO. ECF No. 37 at 4. The fact that Nolting is involved in the operations and management of DSO, standing alone, is insufficient to warrant contempt sanctions for Nolting based on DSO's failure to comply with the Order. *See Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 975 (D. Minn. 2013) (declining to hold CEO in contempt personally even though CEO's company was found in contempt).

However, a non-party may be held in contempt for the actions of a defendant bound by a court order "if he either abets the defendant or is legally identified with him." *Chi. Truck Drivers*, 207 F.3d at 507 (sole shareholder, officer, and agent of corporation could be held in contempt for corporation's failure to make payments pursuant to a court order). "In the Eighth Circuit, a company's sole owner or officer can be found in contempt for noncompliance with a court order even though the officer was not named or referenced in the prior orders." *Bricklayers & Allied Craftworkers Serv. Corp. v. O'Hara Masonry, Inc.*, No. 22-cv-2003 (KMM/TNL), 2023 WL 4580971, at *2 (D. Minn. July 18, 2023) (citing *Chi. Truck Drivers*, 207 F.3d at 507); *see also Schrunk v. J & T Servs., LLC*, No. 19-cv-1137 (SRN/DTS), 2020 WL 9171087, at *3 (D. Minn. Nov. 5, 2020) (citation omitted) (finding defendant's sole officer to be in contempt because "despite being a non-party," he

was "responsible for the contemptuous acts or omissions of the business"), *report and recommendation adopted as modified*, 2021 WL 778084 (D. Minn. Mar. 1, 2021); *Paisley Park Enters., Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 2710703, at *4 (D. Minn. June 28, 2019), *report and recommendation adopted*, 2019 WL 4080782 (D. Minn. Aug. 29, 2019).

Data Axle has established that Nolting was DSO's sole owner and shareholder, and that Nolting was "the sole person in control of DSO." Pl.'s Ex. AA at 21, 35. In that role, he is "the only person responsible for acting on [DSO's] behalf and thus the sole person responsible" for DSO's failure to comply with the Order. *Boxill*, 2019 WL 2710703, at *4. Accordingly, the Court holds Nolting in contempt for DSO's failure to pay the judgment against it.

## II.   Wrongful Use of Data Axle's Databases

Data Axle next seeks contempt sanctions against Nolting[5] for his alleged continued wrongful use of Data Axle's copyrighted material. ECF No. 59 at 17–18. The Court has already concluded that Nolting has knowledge of the Order, so the only question is whether Nolting violated the Order.

Here, unlike other parts of the Order, the Court was clear that DSO "*and its officers, agents, servants, employees, and attorneys, as well as those persons or entities in active*

---

[5]   Data Axle appears to suggest that DSO should also be held in contempt for operating datasource360.com. ECF No. 59 at 17 ¶ 4. But Data Axle offers no evidence that DSO (as opposed to Nolting) was involved in forming or operating datasource360.com. Rather, it appears that Data Axle's primary grievance is with Nolting's conduct, so the Court will only focus on Nolting's alleged wrongful use of Data Axle's copyrighted material.

*concert or participation with such persons*" were permanently enjoined from "wrongfully using, advertising, marketing . . . [or] profiting from" Data Axle's copyrighted material. ECF No. 37 at 4–5 (emphasis added). Nolting admits that this portion of the Order applies to him.

Data Axle alleges that Nolting violated the Order by "wrongfully using, advertising, [or] marketing" Data Axle's copyrighted databases through datasource360.com. ECF No. 59 at 10–11. To prevail, therefore, Data Axle must answer two questions in the affirmative: "Is Nolting involved in datasource360.com?" and "Does datasource360.com use, advertise, or market Data Axle's copyrighted material?"

The first question is not in dispute: Nolting admits that he is involved with datasource360.com. The second question—whether datasource360.com is using and advertising Data Axle's copyrighted material—is in dispute and more difficult to answer. Although Data Axle argues that datasource360.com is "provid[ing] identical goods and services to those found to be infringing in the Order," the only evidence in support of that assertion that Data Axle provides are screenshots of datasource360.com's website, which show that datasource360.com is offering some databases for sale with the same names as some databases sold by DSO.[6] ECF No. 58-1 at 70–78 (Pl.'s Ex. R).

But just because datasource360.com's databases for sale are named similarly or even identically to DSO's database offerings, and just because the two websites share a "distinctive look and feel," does not mean that the *content* of datasource360.com's

---

[6] For example, both DSO and datasource360.com offer databases with names like, "USA B2B Cell Phone Database," "USA White Pages," and "USA Cell Phone Database."

11

databases is the same as DSO's. Recall that when Data Axle originally investigated DSO for copyright infringement, Data Axle engaged in an extensive data audit to determine whether DSO's databases infringed upon Data Axle's copyrighted information. ECF No. 1 ¶¶ 58–76. Here, in stark contrast, Data Axle admits that it has not investigated or even inquired into the content of datasource360.com's databases. Without doing so, Data Axle cannot exclude the real possibility that Nolting has established datasource360.com but is selling non-infringing databases—as Nolting testified at the show-cause hearing, testimony which the Court found forthcoming.

To be sure, it is altogether possible that Nolting continues to sell infringing databases through datasource360.com. But it is Data Axle's burden to show, by clear and convincing evidence, that Nolting is doing so. *See Chi. Truck Drivers*, 207 F.3d at 505. Absent any inquiry into the content of datasource360.com's databases, the Court cannot conclude that it is "highly probable" that datasource360.com (and by extension, Nolting) wrongfully used or continues to use Data Axle's copyrighted material. *Ulrich v. City of Crosby*, 848 F. Supp. 861, 869 (D. Minn. 1994); *see also In re Houge*, 764 N.W.2d 328, 334 (Minn. 2009) (explaining that the "clear and convincing evidence" standard requires a "a high probability that the facts are true"). The Court will therefore deny Data Axle's motion to hold Nolting in contempt for the alleged continued wrongful use of Data Axle's copyrighted material.[7]

---

[7]  Denial of Data Axle's motion to hold Nolting in contempt is without prejudice to Data Axle's right to renew its motion with additional evidence showing that datasource360.com's databases contain Data Axle's copyrighted material.

### III. Failure to Provide Accounting

Data Axle next asks the Court to order "DSO and Mr. Nolting . . . to provide the accounting required by [] the Judgment within 30 days and issue a warrant for Mr. Nolting's arrest if he fails to do so." ECF No. 59 at 18. There is no dispute that DSO failed to provide for the accounting of records within the time provided by the Order. Because this failure constitutes a violation of the Order, the Court holds DSO in contempt. And because Nolting was DSO's sole officer and shareholder when DSO was an active entity, the Court also holds Nolting in contempt for this violation. *See Chi. Truck Drivers*, 207 F.3d at 507.

### IV. Impoundment, Production, and Destruction

Data Axle finally asks the Court to order DSO and Mr. Nolting to "produce (to Data Axle) all copies of the Data Axle Business Databases or portions thereof in the possession or control of DSO and/or Mr. Nolting" and "destroy all copies of the Data Axle Business Databases or portions thereof in the possession or control of DSO as required by [] the Judgment within 30 days and issue a warrant for Mr. Nolting's arrest if he fails to do so." ECF No. 59 at 18. It is undisputed that DSO has made no attempt to impound, produce, or destroy Data Axle's copyrighted material in its possession or control in the manner required by the Order. Because this constitutes a violation of the Order, the Court holds DSO in contempt. And because Nolting was DSO's sole officer and shareholder when DSO was an active entity, the Court also holds Nolting in contempt for this violation. *See Chi. Truck Drivers*, 207 F.3d at 507.

In summary, the Court holds DSO and Nolting in contempt for DSO's failure to pay the judgment, to provide an accounting of records, and to impound, produce, and destroy Data Axle's copyrighted information.

## V. Appropriate Sanctions

The next step is determining what sanctions are appropriate. "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chi. Truck Drivers*, 207 F.3d at 505 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "Either incarceration or a fine may accomplish the purpose of coercion, while, [w]here compensation is intended, a fine is imposed, payable to complainant." *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted). The Court must consider three factors in crafting a sanction: (1) the "character and magnitude of the harm"; (2) "the probable effectiveness of any suggested sanction in bringing about the result desired"; and (3) "the amount of [the contemnor's] financial resources and the consequent seriousness of the burden" to that particular party. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1224 (8th Cir. 2006) (citation omitted). Any sanction for civil contempt must not be punitive. *United States v. Hefti*, 879 F.2d 311, 315 (8th Cir. 1989).

As an initial matter, the Court will not impose contempt sanctions on DSO. DSO is an administratively terminated entity, so the "probable effectiveness" of imposing a financial sanction in coercing DSO's compliance with the Order is likely low. *Nowotny*, 470 F.3d at 1224; *see In re Grand Jury*, 705 F.3d 133, 148 (3d Cir. 2012) ("If [an entity], as a defunct corporation, is nothing more than a ghost without officers or property, these

normally effective sanctions may be meaningless."). Instead, the Court believes that sanctions against Nolting personally will be more effective in bringing about compliance with the Order. With that understanding, the Court proceeds to weigh the *Nowotny* factors.

The Court finds the "character and magnitude" of the harm weighs in favor of a monetary sanction to achieve compliance with the Order. *Nowotny*, 470 F.3d at 1224. "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers*, 207 F.3d at 504. Without the contempt power, "what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *United Mine Workers of Am.*, 330 U.S. at 290 n.56 (citation omitted). DSO's (and, by extension, Nolting's) total failure to comply with the Order to date reflects a flagrant disrespect for this Court and of the judicial power of the United States.

Moreover, DSO's and Nolting's noncompliance here "is both monetary and prejudicial to the timely resolution of this case." *Bd. of Trs. of Teamsters Joint Council 32 – Emps. Health & Welfare Fund v. H. Brooks & Co.*, No. 21-cv-1455 (KMM/DJF), 2022 WL 17352459, at *4 (D. Minn. Dec. 1, 2022) (citation omitted). Obviously, Data Axle is harmed monetarily by DSO's failure to pay the judgment against it. *See Edeh v. Carruthers*, No. 10-cv-2860 (RJK/JSM), 2011 WL 4808194, at *4 (D. Minn. Sept. 20, 2011) (finding harm where defendant's noncompliance was "an obstacle to plaintiff's collection of the judgment"). But by failing to provide the required accounting, impoundment, and production of records, Data Axle also cannot learn "the full extent of the harm" caused by DSO's infringement, which works a separate harm to Data Axle. *H.*

*Brooks & Co.*, 2022 WL 17352459, at *4. And, because DSO has failed to produce and destroy any infringing databases, Data Axle is further harmed by the risk of its copyrighted databases being further infringed by other parties.

As for the probable effectiveness of a sanction and Nolting's financial resources, Data Axle argues that imprisonment is the only effective sanction. Data Axle argues that imprisonment is warranted as a civil contempt penalty because Nolting's only property is allegedly exempt from collection under Florida homestead laws and because Nolting has allegedly created a web of entities designed to skirt damages awards. ECF No. 59 at 12–13.

Although the Court has the authority to order imprisonment as a civil contempt penalty, *Chi. Truck Drivers*, 207 F.3d at 505, the Court will not do so here (at least not yet). The weight of case law in this Circuit favors monetary sanctions for contempt in infringement cases. *See, e.g.*, *Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1249–50 (D. Minn. 2005); *Chase Indus., Inc., Durus Div. v. Frommelt Indus., Inc.*, 806 F. Supp. 1381, 1388 (N.D. Iowa 1992); *Core Distrib., Inc. v. Xtreme Power (USA) Inc.*, No. 15-cv-1547 (DWF/BRT), 2016 WL 2733407, at *4 (D. Minn. May 10, 2016); *Litecubes, L.L.C. v. N. Light Prods., Inc.*, No. 4:04CV00485-ERW, 2007 WL 892459, at *3 (E.D. Mo. Mar. 21, 2007). Data Axle argues that monetary sanctions are insufficient because Nolting "created a web of entities designed to skirt damages awards," ECF No. 59 at 12, but this concern is misplaced when, here, the Court can enter monetary sanctions against Nolting personally. And although Data Axle alleges that Nolting's only property is a home protected by Florida's homestead exemption, ECF No. 59 at 12, Data Axle has not

16

demonstrated that Nolting is completely judgment-proof. Indeed, Data Axle notes that Nolting's home is a "nearly-million dollar" property and that Nolting lives for part of the year in Mexico, *id.* at 16, suggesting that Nolting may have funds to pay a monetary sanction.

The Court will also not grant Data Axle its alternative request to refer Nolting to the U.S. Attorney for the District of Minnesota for criminal contempt proceedings. ECF No. 59 at 13–15. "[C]riminal contempt is an extraordinary punishment that is used sparingly." *ecoNugenics*, 381 F. Supp. 3d at 1089. Data Axle attempts to analogize this case to *Josephs v. Marzan*, No. 21-cv-749 (JRT/DTS), 2024 WL 3904646 (D. Minn. Aug. 22, 2024), but that analogy falls flat. In *Josephs*, the defendant defrauded the plaintiff through the defendant's company. 2024 WL 3904646, at *1. The Court ordered the defendant to divest from the company, but instead of doing so, the defendant proceeded to defraud five other victims through the same company. *Id.* at *2–3. After concluding that monetary penalties would "accomplish nothing" given the defendant's long history of ignoring monetary judgments, the Court referred the defendant to the U.S. Attorney's Office for criminal contempt proceedings. *Id.* at *4.

Although the Court does not wish to diminish the severity and willfulness of Nolting's conduct, the contemptuous behavior here does not rise to the level of egregious conduct in *Josephs*. First, unlike in *Josephs*, there is no evidence that Nolting personally has a long history of avoiding monetary judgments, such that monetary sanctions would be ineffective to coerce compliance with the Order. Second, the defendant in *Josephs* had perpetrated "additional fraudulent schemes" against five unsuspecting individuals, such as

17

personal assistants and a romantic partner. *Id.* at *2–3. Here, Data Axle has failed to demonstrate that Nolting is perpetrating additional schemes; rather, Nolting has only failed to satisfy DSO's past obligations. ECF No. 58-2 at 15, 19–20, 32, 34, 36. Because this case—which is, at its core, an intellectual-property dispute between two businesses—does not present the "extraordinary" circumstances reflected in *Josephs*, a criminal referral is inappropriate. *ecoNugenics*, 381 F. Supp. 3d at 1089.

After weighing the *Nowotny* factors and considering the comparable case law in this Circuit, the Court will impose a $1,000-per-day fine against Nolting for each day after 30 days from the date of this order that DSO continues to violate the Court's April 12, 2024 Order. This sanction approximates the amount of income DSO received each day from 2020 to 2023. Pl.'s Ex. AA at 13, 15, 29, 40.[8] Because this sanction "is designed to coerce a recalcitrant party to comply" with a court order, the Court orders Nolting to pay this fine to the Clerk of Court for this District. *Nowotny*, 470 F.3d at 1224. The $1,000 per-day fine will continue until the following conditions are met: (1) DSO satisfies the money judgment against it or enters into a mutually agreed-upon payment arrangement with Data Axle, (2) DSO or its representative provides the accounting of records required by the Order, and (3) DSO or its representative impounds, produces, and destroys Data Axle's copyrighted databases, in accordance with the Order.

---

[8] Specifically, DSO's tax returns reflect that it made $222,319 in 2020; $413,334 in 2021; $450,032 in 2022; and $374,643 in 2023. Pl.'s Ex. AA at 13, 15, 29, 40. Dividing the sum of that income ($1,460,328) by 1460 days (4 years) yields approximately $1,000 in daily income.

If DSO or Nolting contends that DSO is unable to comply with these conditions, Nolting must explain (1) why, "categorically and in detail," DSO cannot comply, (2) that its inability to comply is not "self-induced," and (3) that DSO made "in good faith all reasonable efforts to comply." *Chi. Truck Drivers*, 207 F.3d at 506 (citations omitted). To the extent that DSO or Nolting argues that DSO cannot comply with these conditions because DSO is an administratively terminated entity, the Court rejects that argument. *See Lyman Lumber Co. v. Favorite Constr. Co.*, 524 N.W.2d 484, 486–89 (Minn. Ct. App. 1994).

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Data Axle's Motion for Sanctions (ECF No. 57) is **GRANTED IN PART AND DENIED IN PART**.

2. DSO and Nolting are held in civil contempt for DSO's failure to comply with the Court's April 12, 2024 order.

3. The parties shall provide a joint status report on or before 30 days after the date of this order, explaining whether DSO and Nolting are in compliance with the conditions set forth in this order. Those conditions are: (1) DSO satisfies the money judgment against it or enters into a mutually agreed-upon payment arrangement with Data Axle, (2) DSO or its representative provides the accounting of records required by the April 12, 2024 order, and (3) DSO or its representative impounds, produces, and destroys Data Axle's copyrighted databases, in accordance with the April 12, 2024 order.

4. If DSO and Nolting cannot comply with the conditions set forth in this order, Nolting must provide briefing on or before 30 days after the date of this order explaining (1) why, "categorically and in detail," DSO cannot comply, (2) that DSO's inability to comply is not "self-induced," and (3) that DSO made "in good faith all reasonable efforts to comply." *Chi. Truck Drivers*, 207 F.3d at 506 (citations omitted).

5. Absent any further order of the Court, Nolting shall pay to the Clerk of Court a fine in the amount of $1,000.00 per day, beginning 30 days after the date of this order, and continuing thereafter until the conditions set forth in this order are met.

Dated: May 1, 2025

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge