UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DATA AXLE, INC., | Case No. 23-cv-3255 (LMP/DLM) |
| Plaintiff, | |
| v. | **ORDER DENYING**<br>**STAY PENDING APPEAL** |
| CFM DATA NETWORK, LLC;<br>ANDREW NOLTING; and JOHN and<br>JANE DOES, | |
| Defendants. | |

George W. Soule and Isaac W. Messmore, **Soule & Stull LLC, Edina, MN**, and John V. Matson, Patrick J. Kimmel, and Elizabeth Luebbert Enroth, **Koley Jessen P.C., L.L.O., Omaha, NE**, for Plaintiff.

Nathan M. Hansen, **Hansen Law Office, Willernie, MN**, for Defendant Andrew Nolting.

On April 12, 2024, the Court entered an order (the "April 2024 Order") granting default judgment against Defendant CFM Data Network, LLC d/b/a DataSourceOne.com ("DSO"). *See* ECF No. 37. Plaintiff Data Axle, Inc. ("Data Axle") later sought contempt sanctions against DSO and Defendant Andrew Nolting ("Nolting"), arguing that DSO and Nolting had violated the Order. *See* ECF No. 57. The Court granted in part and denied in part Data Axle's motion for sanctions, holding that DSO violated several portions of the April 2024 Order. ECF No. 79 ("May 2025 Order"). The Court imposed a $1,000-per-day sanction on Nolting (DSO's sole owner and shareholder) until DSO complied with its obligations under the April 2024 Order. *Id.* at 20. Those sanctions were set to begin on May 31, 2025. *Id.* On May 22, 2025, Nolting moved the Court to stay imposition of the

sanctions pending an appeal of the May 2025 Order to the U.S. Court of Appeals for the Eighth Circuit. *See* ECF No. 83. The Court administratively stayed imposition of those sanctions until it decided this motion. ECF No. 87. Data Axle opposes the motion. ECF No. 95. Because Nolting shows neither that he is likely to succeed on appeal nor that he stands to suffer irreparable harm, the Court denies Nolting's motion and lifts the administrative stay.

## ANALYSIS[1]

A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review," and consequently "is not a matter of right" but instead is "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 427, 433 (2008) (citation omitted). The party requesting a stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In exercising its discretion, the Court considers the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

---

[1] The relevant factual background can be found in the May 2025 Order. *See* ECF No. 79 at 2–6.

*Id.* at 434 (citation omitted). "The first two factors of the traditional standard are the most critical." *Kansas v. United States*, 124 F.4th 529, 533 (8th Cir. 2024) (citation omitted). Both factors must be met for a stay to be issued. *See Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018) ("The most important factor is likelihood of success on the merits, although a showing of irreparable injury without a stay is also required."). For these two factors, the movant must show "more than a mere possibility of relief" and more than "some possibility of irreparable injury." *Kansas*, 124 F.4th at 533 (citation omitted). Nolting demonstrates neither.

**I.      Strong Showing of Success on the Merits**

Nolting is unlikely to succeed on the merits of his appeal because he fails to show that the Eighth Circuit has jurisdiction over his appeal of the May 2025 Order in the first place. *See In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 300 (S.D.N.Y. 2010) ("In evaluating a litigant's likelihood of success on appeal, a court is obliged to consider the likelihood that the Court of Appeals has jurisdiction over the order appealed from . . . ."); *United States v. Washington*, 20 F. Supp. 3d 986, 1069 (W.D. Wash. 2013) (same). The Courts of Appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A "final decision" under Section 1291 "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (citation omitted). At that point, the district court typically "disassociates itself from [the] case." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). In accordance with this precedent, the

3

Eighth Circuit has squarely held that the "imposition of sanctions for civil contempt during the course of a pending action is an appealable final order only if the person held in contempt is not a party to the pending action." *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 792 (8th Cir. 2004).

Nolting—who remains a party in this action—is attempting to appeal the "imposition of sanctions for civil contempt during the course of a pending action," an approach that is entirely foreclosed by *Purdy*. Perhaps recognizing this dispositive case law, Nolting suggests that this action is functionally no longer pending because the May 2025 Order made Nolting "personally liable for the debt of DSO" and essentially granted all of the relief requested by Data Axle in its complaint against Nolting. *See* ECF No. 86 at 2.

The Court did no such thing. The May 2025 Order clearly recognizes that judgment from the April 2024 Order was entered against DSO, not Nolting personally. *See* ECF No. 79 at 9 ("[T]he Court observes that Nolting was not personally ordered to pay the judgment for DSO; rather, the Court only entered judgment for money damages against DSO."); *id.* at 10 (recognizing that Nolting was subject to one portion of the April 2024 Order, "unlike other parts of the [April 2024] Order"). Judgment has not been entered against Nolting personally, and the Court has not "disassociate[d] itself" from considering Nolting's liability to Data Axle. *Carpenter*, 558 U.S. at 106. The merits of that question are still under consideration by the Court, meaning that the May 2025 Order did not "end[] the litigation on the merits." *Cunningham*, 527 U.S. at 204.

Naturally, Nolting complains that he is being held in contempt for DSO's failure to comply with the April 2024 Order.[2]  But as DSO's sole owner and shareholder—a fact that Nolting admitted at the evidentiary hearing—he may be held in contempt for the failure of DSO to comply with the April 2024 Order.  *See Chi. Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000); *see also Bricklayers & Allied Craftworkers Serv. Corp. v. O'Hara Masonry, Inc.*, No. 22-cv-2003 (KMM/TNL), 2023 WL 4580971, at *2 (D. Minn. July 18, 2023) (citing *Chi. Truck Drivers*, 207 F.3d at 507); *see also Schrunk v. J & T Servs., LLC*, No. 19-cv-1137 (SRN/DTS), 2020 WL 9171087, at *3 (D. Minn. Nov. 5, 2020) (citation omitted), *report and recommendation adopted as modified*, 2021 WL 778084 (D. Minn. Mar. 1, 2021); *Paisley Park Enters., Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 2710703, at *4 (D. Minn. June 28, 2019), *report and recommendation adopted*, 2019 WL 4080782 (D. Minn. Aug. 29, 2019).  That Nolting may be held in contempt for DSO's failure does not mean that the Court has found Nolting personally liable for DSO's obligations under the April 2024 Order (for example, through an alter-ego claim).  As the Eighth Circuit made clear in *Chicago Truck Drivers*, a court may hold a company's sole owner in contempt for the company's failure to render payment pursuant to a court order without making the owner personally liable for the payment itself.  207 F.3d at 508.  That is what the Court has done.

---

[2]  Being held in contempt for an entity's failure to comply with a Court order is *not* the same as being held personally liable for the entity's obligations under that order.  For example, Data Axle cannot seize Nolting's personal property to satisfy DSO's debts.  However, binding Eighth Circuit case law allows the Court to sanction DSO's sole owner and shareholder for DSO's failure to comply with the April 2024 Order.  *See Chi. Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).

Nolting also argues that the May 2025 Order is appealable under the collateral-order doctrine. ECF No. 86 at 5. That doctrine allows appeals "from a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citation omitted) (internal quotation marks omitted). The Supreme Court has "repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Id.* at 868 (internal citation omitted). Accordingly, for the collateral-order doctrine to apply, the challenged order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799–800 (1989) (citation omitted). None of these conditions are met.

*First*, an order does not "conclusively determine the disputed question" if the order is "tentative" or "subject to revision in the District Court." *Swint*, 514 U.S. at 42 (citation omitted). Here, the Court explained in the May 2025 Order that it would consider revising sanctions against Nolting if DSO or Nolting explained in briefing why, under *Chicago Truck Drivers*, DSO could not comply with the May 2025 Order. ECF No. 79 at 20. Neither DSO nor Nolting have provided any such briefing. But the May 2025 Order by its terms is "subject to revision" if DSO or Nolting demonstrate an inability to comply. *Swint*, 514 U.S. at 42.

6

*Second*, Nolting's argument that the May 2025 Order resolves an issue "separate from the merits of the action," ECF No. 86 at 5, is belied by his strenuous assertion that the May 2025 Order effectively decided the merits of this case against him, *id.* at 1. Although the Court has not decided the merits of this case against Nolting, under Nolting's own framing of this case, he necessarily cannot satisfy the second condition of the collateral-order doctrine.

*Third*, the requirement that a collateral order be "effectively unreviewable" upon final judgment means that without immediate review, an important right or interest with a "particular value of a high order" would be "effectively lost." *Will v. Hallock*, 546 U.S. 345, 351–52 (2006). The loss of this important right or interest must "imperil a substantial public interest." *Id.* at 353. Here, the only thing that Nolting stands to lose from waiting until final judgment to appeal the May 2025 Order is $1,000 per day. That loss alone, while perhaps financially significant to Nolting, is not "effectively unreviewable on appeal from a final judgment." *Coleman v. Sherwood Med. Indus.*, 746 F.2d 445, 446–47 (8th Cir. 1984) (holding order awarding attorneys' fees not appealable under collateral-order doctrine). After all, if the Eighth Circuit determines on appeal from final judgment in this case that the May 2025 Order is erroneous, Nolting will not have to pay the sanction or would be entitled to a refund of the sanction he had paid to date.[3] *See Saber v. FinanceAmerica Credit Corp.*, 843 F.2d 697, 703–04 (3d Cir. 1988) (holding order to pay money was not appealable under collateral-order doctrine because there was no showing "that the money

---

[3] Nolting has not argued that he is unable to pay the $1,000-per-day sanction.

7

[appellants] have paid may be irretrievable for any other reason should they eventually prevail"). Nor does Nolting's payment of the sanction "imperil a substantial public interest." *Will*, 546 U.S. at 353.

Nolting is therefore unlikely to show that the collateral-order doctrine applies to the May 2025 Order. Consequently, given that the Eighth Circuit likely will not have jurisdiction over Nolting's appeal of the May 2025 Order, Nolting has failed to make a "strong showing that he is likely to succeed on the merits" of his appeal. *Nken*, 556 U.S. at 434. As such, he does not meet the critical first factor to warrant a stay.

## II.     Irreparable Harm

Nolting also fails to show irreparable harm absent a stay, which further requires denial of Nolting's motion. *See Brakebill*, 905 F.3d at 557. As noted above, absent a stay, the only thing Nolting stands to lose is $1,000 per day. But "economic loss does not, in and of itself, constitute irreparable harm." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (citation omitted). Narrow exceptions to this general rule may apply if the party ordered to pay "is insolvent or facing imminent bankruptcy, or is in a perilous financial state," *S.D. Network, LLC v. Twin City Fire Ins. Co.*, 4:16-cv-04031-KES, 2017 WL 11575316, at *3 (D.S.D. Dec. 21, 2017) (quoting *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 186, 194 (S.D.N.Y. 2007)), or if the monetary loss is "unrecoverable," *Iowa Utils. Bd.*, 109 F.3d at 426.; *see also GLG Farms LLC v. Brandt Agric. Prods. LTD*, No. 4:14-cv-153, 2017 WL 11704771, at *2 (D.N.D. Oct. 3, 2017) (quoting *Mann v. Wash. Metro. Area Transit Auth.*, 185 F. Supp. 3d 189, 195 (D.D.C. 2016))

(explaining that monetary loss may be irreparable if "later legal remedies would be inadequate to restore that party to the 'status quo ante'").

Neither of those conditions apply. Nolting has provided no evidence that paying the sanction will leave him insolvent or on the brink of bankruptcy.[4] Nor will the monetary loss to Nolting be unrecoverable; if the Eighth Circuit agrees that the May 2025 Order is erroneous, Nolting would be entitled to a refund of the sanctions that he paid. *See Lubow v. U.S. Dep't of State*, 934 F. Supp. 2d 311, 313 (D.D.C. 2013) (finding a monetary payment was not an irreparable harm to the movant because the other party would "simply refund the money it collected" if the movant prevailed on appeal). And although Nolting suggests that the Court could order incarceration as a contempt sanction, ECF No. 84 at 4, the Court has not done so, ECF No. 79 at 16, rendering any harm from Nolting's hypothetical incarceration purely speculative. *See Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986) (holding that "theoretical" harms are not irreparable). Indeed, at the evidentiary hearing, the Court made clear that it would focus on financial sanctions, rather than incarceration. *See* ECF No. 100 at 5:20–23. Because Nolting fails to demonstrate irreparable harm—a necessary prerequisite for a stay—his motion must be denied.

**III.    The Court Is Inclined To Amend the May 2025 Order, But Cannot Do So**

Although the Court could stop here, the Court observes that Nolting argues on the merits that a contempt sanction cannot be used to coerce compliance with a money

---

[4]    Nolting was given that chance. In its May 2025 Order, the Court explained that if Nolting was unable to comply with the conditions set forth in the May 2025 Order, he should provide briefing about why he was unable to comply. ECF No. 79 at 20. But Nolting has not provided that briefing.

9

judgment.  ECF No. 84 at 3.  Because that argument was never presented during briefing or argument on Data Axle's sanctions motion, it is forfeited for purposes of appellate review.  *See Shanklin v. Fitzgerald*, 397 F.3d 596, 601 (8th Cir. 2005).

Nonetheless, the Court has an independent obligation to get the law right.  And after considering Nolting's additional cited authority, the Court agrees that it would be inappropriate to impose a contempt sanction on Nolting for DSO's failure to pay the money judgment against it.

Courts have generally held that "when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt." *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 980 (11th Cir. 1986); *see Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147–48 (9th Cir. 1983); *Sehlstrom v. Sehlstrom*, 925 N.W.2d 233, 239–40 (Minn. 2019); *Olson v. Desserts on the Boulevard, LLC*, No. 4:12-CV-1629 CAS, 2014 WL 307144, at *3 (E.D. Mo. Jan. 28, 2014); *see also* 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3011 (3d ed., May 2025 update).

In ordering contempt sanctions against Nolting for DSO's failure to pay the money judgment against it, the Court relied on the Eighth Circuit's decision in *Chicago Truck Drivers*.  *See* ECF No. 79 at 9.  In that case, a pension fund brought suit against corporations for interim payments of withdrawal liability under the Employee Retirement Income Security Act ("ERISA").  *Chi. Truck Drivers*, 207 F.3d at 503.  The district court granted the pension fund's motion for summary judgment and ordered the corporations to begin making interim payments within sixty days.  *Id.*  When the corporations failed to make

10

interim payments, the pension fund sought contempt sanctions against the corporations and the corporations' sole owner and shareholder. *Id.* at 503, 506–07. The Eighth Circuit confirmed that civil contempt sanctions could be levied against the corporations *and* the corporations' sole owner and shareholder for the corporations' failure to make the interim payments. *Id.* at 505–07.

At first blush, the facts of *Chicago Truck Drivers* seem on all fours with this case, because in both cases, a corporation's sole owner and shareholder was held in contempt for the corporation's failure to render payment to the plaintiff. But Nolting persuasively suggests that *Chicago Truck Drivers* may be a narrow exception to the general rule that "when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt." *Combs*, 785 F.2d at 980. As one court has observed, in cases where contempt is appropriately imposed for the violation of an order to render payment, the types of relief are usually the kinds that are "traditionally available in equity" or "those arising under a statutory scheme that implements an important national policy," such as ERISA. *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 172 F. Supp. 3d 691, 697 (S.D.N.Y. 2016) (collecting cases, including an ERISA case). Use of the contempt power is also "an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment." *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) (contempt for failure to pay monetary sanctions for attorney misconduct).

The Court agrees that a distinction between using the contempt power in these delineated circumstances and using the contempt power to enforce an ordinary money judgment is "warranted in light of public policy." *Loftus v. Se. Penn. Transp. Auth.*, 8 F.

11

Supp. 2d 464, 468 (E.D. Pa. 1998). Specifically, "holding a debtor in contempt for failing to pay a money judgment against him would essentially amount to putting him in 'debtors' prison'—a practice that is not recognized in the United States." *SEC v. New Futures Trad. Int'l Corp.*, No. 11-cv-532-JL, 2012 WL 1378558, at *2 (D.N.H. Apr. 20, 2012). As such, "enforcement of a money judgment as between private parties is best left to the creditor-debtor mechanisms provided for in the Federal Rules of Civil Procedure." *Loftus*, 8 F. Supp. 2d at 468. The Court therefore understands *Chicago Truck Drivers* to stand for the limited proposition that contempt sanctions may be used to coerce payment of a money judgment in the context of a "statutory scheme that implements an important national policy" (in *Chicago Truck Drivers*' case, ERISA). *Ecopetrol*, 172 F. Supp. 3d at 697.

Data Axle has not argued that the payment ordered in the April 2024 Order is anything other than an ordinary money judgment. Accordingly, the Court believes that it should amend the May 2025 Order to remove contempt sanctions associated with DSO's failure to pay the money judgment, while leaving all other aspects of the May 2025 Order in full effect. Specifically, Nolting and DSO would still be held in contempt, and the $1,000-per-day sanction on Nolting would remain until two conditions are met: (1) DSO or its representative provides the accounting of records required by the April 2024 Order, and (2) DSO or its representative impounds, produces, and destroys Data Axle's copyrighted databases, in accordance with the April 2024 Order. *See* ECF No. 79 at 18.

But there's a problem. Nolting has filed a notice of appeal of the Court's May 2025 Order. ECF No. 90. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of

its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). After a notice of appeal has been filed, therefore, this Court "may not reexamine or supplement the order being appealed." *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999); *see also Liddell ex rel. Liddell v. Bd. of Educ. of City of St. Louis*, 73 F.3d 819, 823 (8th Cir. 1996) ("Once the notice of appeal was filed, the district court had no jurisdiction to reconsider its prior decision.").

Therefore, even though the Court is inclined to amend the May 2025 Order favorable to Nolting, it lacks jurisdiction to do so. Instead, all the Court can do is deny Nolting's motion for a stay and allow the May 2025 Order to go into effect.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Nolting's Motion for Stay Pending Appeal (ECF No. 83) is **DENIED**.

2. The temporary stay of imposition of sanctions previously entered by the Court (ECF No. 87) is **LIFTED**. Sanctions will begin accruing against Nolting on June 26, 2025.

Dated: June 23, 2025           *s/Laura M. Provinzino*
                               Laura M. Provinzino
                               United States District Judge